**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0465n.06

No. 14-4279

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Aug 12, 2016
DEBORAH S. HUNT, Clerk

CHARLES SHORTER,

  Petitioner-Appellant,

v.

RHONDA RICHARD,

  Respondent-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

BEFORE:  KEITH, CLAY, and WHITE, Circuit Judges.

**CLAY, Circuit Judge.** Petitioner Charles Shorter appeals the final judgment of the district court denying him a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, we **AFFIRM** the denial of the writ.

## BACKGROUND

### Factual Background

On November 13, 2008, Petitioner Charles Shorter pled guilty to one count of murder with a three-year firearm specification, one count of having weapons under disability, and one count of evidence tampering. Petitioner had apparently negotiated his sentence with state prosecutors, and at the plea hearing, the trial court indicated that it would agree to Petitioner's request, to which the prosecution did not object, to grant community control sanctions to a co-defendant. After the trial court accepted Petitioner's guilty plea, Petitioner's counsel engaged in the following colloquy with the trial court:

> [DEFENDANT'S COUNSEL]: I would also ask the Court to remind my client that there have been various motions and rulings made by the Court during these proceedings, and thereby, entering the guilty pleas, those -- there are no appeal issues there.
> THE COURT: Right. That is correct, Mr. Shorter. By entering a plea of guilty, that will eliminate any and all grounds for appeal that may exist regarding previous rulings I have made; do you understand that, sir?
> THE DEFENDANT: Yes.

(Hearing Tr. at 24.) The court did not advise Petitioner of his appellate rights under Ohio law at any point in the hearing. Although the plea entry form listed several constitutional rights that Petitioner waived by entering a guilty plea, it made no mention of Petitioner's right to appeal his sentence. Defendant was sentenced to eighteen years to life in prison. The termination entry was filed on November 17, 2008.

In response to a letter from Petitioner, Petitioner's trial counsel sent a letter dated December 8, 2008 that obliquely addressed appellate rights, among other issues:

> You would be entitled to get a free transcript of all hearings if there was an appeal due to your indigency. Please keep in mind that you entered into an agreed sentence with your special and unique request regarding Joy's case. One possible error you could allege for an appeal is whether your guilty plea was involuntary, an unlikely scenario. If you would be able to get your plea set aside, you would agaim [sic] face the possibility of the maximum sentence of all charges that do not merge and also put [your co-defendant's] community control at risk and force her to testify against you.
>
> I hope this letter answers your questions and fulfills your requests. Thank you.

(R. 12, Ex. to Resp. to Mot. to Dismiss at Page ID 179.) The record does not show any further communication between Petitioner and his counsel regarding an appeal.

In November 2013, Petitioner filed a notice of direct appeal pursuant to Ohio R. App. 4(A) and a motion for leave to seek delayed appeal pursuant to Ohio R. App. 5(A). In the Rule 5(A) motion for delayed appeal, Petitioner argued at length that his appeal should be heard, but did not state what grounds he would assert if the appeal were granted. Petitioner attached an

affidavit to this motion claiming that he had learned of his right to appeal only after speaking with a fellow inmate on October 28, 2013. The Ohio Court of Appeals denied Petitioner's request for a delayed appeal in an unreasoned decision on December 23, 2013. Although Petitioner appealed the denial, the Ohio Supreme Court declined to accept jurisdiction on May 14, 2014.

## Procedural History

On July 10, 2014, Petitioner filed a pro se habeas petition in the United States District Court for the Southern District of Ohio alleging the following two grounds for relief, both of which he had included in his brief to the Ohio Supreme Court:

> GROUND ONE: Petitioner was denied due process and equal protection of the law, when the trial court did not inform him of his appellate rights and his subsequent application for leave to file a delayed appeal was denied, in violation of the Fourteenth Amendment to the United States Constitution.
>
> GROUND TWO: Petitioner was denied effective assistance of trial counsel when counsel failed to ensure that petitioner was properly instructed as to his right to appeal, and fails [sic] to ensure that a timely notice of appeal is filed, and petitioner was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

(R. 3, Habeas Petition at Page ID 39, 46.) Respondent moved to dismiss the habeas petition, arguing that the petition was untimely, and that his claims were not cognizable on federal habeas review and/or procedurally defaulted. The second report and recommendation issued by the magistrate judge concluded that because Petitioner was not diligent in pursuing his appellate rights, he could not qualify for a delayed start date of the one-year statute of limitations under the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244(d)(1), and recommended denying relief. The district court adopted the report and recommendation in full, and denied a certificate of appealability.

After Petitioner timely appealed, this Court initially granted a certificate of appealability on whether the Ohio Court of Appeals unconstitutionally denied his motion for leave to file a delayed appeal, and denied a certificate of appealability as to his ineffective assistance of counsel claim. This Court's order stated that the district court had concluded that Petitioner's delayed appeal claim was timely. Respondent moved for reconsideration, and the certificate of appealability was expanded to include whether the claim challenging the denial of his delayed appeal was timely filed.

## DISCUSSION

### Standard of Review

We review de novo the district court's conclusions regarding the timeliness of a habeas petition. *DiCenzi v. Rose*, 452 F.3d 465, 467 (6th Cir. 2006). The Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute of limitations for those in custody pursuant to a state court judgment, which begins running from the latest of the following:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

**Analysis**

Although the trial court's failure to notify Petitioner of his appellate rights under Ohio law set the stage for this habeas case, our inquiry today concerns the actions not of the trial court, but of the Ohio Court of Appeals—and of Petitioner himself. Roughly five years after his sentencing—and nearly as long after receiving a letter describing possible grounds for an appeal—Petitioner filed a motion for delayed direct appeal to the Ohio Court of Appeals. After the thirty-day period for filing a direct appeal, Rule 5(A) allows criminal defendants to bring an appeal "with leave of the court to which the appeal is taken." Ohio R. App. 5(A). In general, a defendant seeking a delayed appeal pursuant to Rule 5(A) must demonstrate cause for both the delay itself, and the length of delay. *Stone v. Moore*, 644 F.3d 342, 346 (6th Cir. 2011). Ohio places no time limit on bringing such motions. *See Board v. Bradshaw*, 805 F.3d 769, 773 (6th Cir. 2015).

The parties dispute whether Petitioner's habeas claim challenging the denial of the direct appeal was timely under AEDPA's one-year statute of limitations. Relying on this Court's decision in *DiCenzi v. Rose*, 452 F.3d 465 (6th Cir. 2006), Petitioner argues that his habeas claim challenging the Ohio appellate court's denial of his appeal accrued when the court denied his appeal, and he is therefore entitled to a later start date of the AEDPA statute of limitations pursuant to § 2244(d)(1)(D). Respondent replies that under *Johnson v. United States*, 544 U.S. 295 (2005), Petitioner cannot avail himself of a delayed start to the limitations period because he did not show due diligence in seeking a delayed direct appeal.

By its terms, section 2244(d)(1)(D) "requires diligence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1933 (2013). The Supreme Court has cautioned against reading this requirement "out of the statute." *Johnson*, 544 U.S. at 310. *Johnson* concerned whether the petitioner could avail

himself of a delayed accrual date under § 2255(f)(4), the similarly worded analog to § 2244(d)(1)(D) applicable to federal convictions, where a petitioner waited over three years to return to state court to attempt to vacate a state conviction that had supported an enhanced federal sentence. 544 U.S. 295. The Supreme Court ruled that although the petitioner had filed his federal habeas petition within one year of the state court's vacatur order, the petition was nonetheless untimely because AEDPA "allows the fact of the state-court order to set the 1–year period running only if the petitioner has shown due diligence in seeking the order," which it deemed the petitioner not to have done. *Id.* at 302.

Emphasizing the petitioner's role in bringing about the vacatur order, the majority held that "[t]he requirement of due diligence must therefore demand something more than the dissent's willingness to accept no diligence at all." *Id.* at 309. It continued:

> Where one "discovers" a fact that one has helped to generate, however, whether it be the result of a court proceeding or of some other process begun at the petitioner's behest, it does not strain logic to treat required diligence in the "discovery" of that fact as entailing diligence in the steps necessary for the existence of that fact.

*Id.* at 310 (internal citations omitted). The Court expressly rejected the petitioner's arguments, comparable to those advanced by Petitioner here, that he was acting pro se and had sought vacatur immediately upon receiving help from an inmate law clerk. *Id.* at 301, 311. In the final section of the opinion, the majority subjected the petitioner to a reasonableness test, holding that he had "delayed unreasonably" and that "on this record . . . [the petitioner] fell far short of reasonable diligence." *Id.* at 311.

Like this case, *DiCenzi v. Rose*, which postdated but did not cite or discuss *Johnson*, involved an Ohio defendant who pled guilty but was not notified of his right to appeal at sentencing. 452 F.3d 465. Two years later, after he had filed motions for judicial release and to

merge his convictions, he contacted a public defender, who informed him of his right to appeal; immediately thereafter, he filed a motion for delayed appeal, which the Ohio Court of Appeals denied. *Id.* at 467. The petitioner subsequently sought federal habeas relief pursuant to 28 U.S.C. § 2254 alleging, among other things, that the Ohio Court of Appeals had unconstitutionally denied his request to file a delayed appeal. *Id.* *DiCenzi* discussed the accrual date of the claim related to the denial of appeal in the briefest of terms:

> This claim accrued when the Court of Appeals for Cuyahoga County denied DiCenzi's motion for delayed appeal, on September 25, 2001. Therefore, under 28 U.S.C. § 2244(d)(1), the AEDPA "clock" began running on September 25, 2001. *See* 28 U.S.C. § 2244(d)(1)(D) (initiating the one-year AEDPA requirement on the date upon which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence).

*Id.* at 468. The citation to § 2244(d)(1)(D) and the parenthetical mention of due diligence suggest that the *DiCenzi* court considered due diligence in seeking delayed appeals; whatever the due diligence inquiry for appeal-based claims, it appears to have been satisfied on the facts of that case.

Reading *DiCenzi* for the proposition that appeal-based claims entail no diligence inquiry, as Petitioner seems to do, likely misconstrues that case, and certainly misconstrues the statute, to which we are obliged to give full effect. Section 2244(d)(1)(D) allows a delayed accrual date beginning with "the date on which the factual predicate of the claim or claims presented *could have been discovered through the exercise of due diligence*" (emphasis added). *Johnson* requires this Court to give meaning to the latter part of this clause, subjecting a petitioner to a duty of reasonable diligence in pursuing appeals as well as attacking sentences directly. *See* 544 U.S. at 310–11. With respect to Petitioner's delayed appeal claim, the factual predicate was the Ohio Court of Appeals' declining to hear his delayed direct appeal, and Petitioner indeed filed a habeas petition within a year of that denial. However, it is not at all clear whether that denial

could have come sooner. The burden of showing due diligence rests with the petitioner. *McSwain v. Davis*, 287 F. App'x 450, 454–55 (6th Cir. 2008).

In this case, Petitioner's sentencing—at which the district court failed to notify him of his appellate rights under Ohio law—triggered the duty of due diligence. Petitioner has given no explanation for the five-year delay in filing a Rule 5(A) motion, and has not mentioned anything he did to inquire about his potential appellate rights—after receiving the 2008 letter from his lawyer in mentioning the possibility of an appeal—save attach an affidavit claiming that he first learned of the possibility of appeal in 2013 from another inmate. For his petition to be timely, Petitioner would have to convince this Court that a duly diligent person in his circumstances would have delayed a full five years in filing his motion for direct appeal. *See Johnson*, 544 U.S. at 310–11. We agree with the district court that on this record, Petitioner did not meet his burden of demonstrating due diligence to discover his appellate rights in the five-year period between his sentencing (and receiving the letter from his attorney), and the conversation with a fellow inmate in 2013 that spurred Petitioner's motion for delayed appeal. We therefore decline to reach the merits of Petitioner's claim.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of habeas relief.

**HELENE N. WHITE, Circuit Judge, concurring in the judgment.** *DiCenzi v. Rose* addressed the same delayed-appeal claim that Shorter raises here and held that the AEDPA clock begins to run on this claim at the time the Ohio Court of Appeals denies the motion for delayed appeal. 452 F.3d 465, 468 (6th Cir. 2006). The majority distinguishes *DiCenzi* by suggesting that the *DiCenzi* panel considered the petitioner's due diligence in seeking his delayed appeal. Maj. Op. at 7. But *DiCenzi* held that the delayed-appeal claim accrued when the Ohio Court of Appeals denied the petitioner's motion for delayed appeal without reference to the petitioner's diligence in filing the motion. 452 F.3d at 468. Further, the majority's suggestion contradicts *DiCenzi*'s explanation addressing the petitioner's other claims. When reviewing the timeliness of those claims, the court concluded that it could not find, based on the record, that the petitioner was diligent in bringing his delayed appeal, and accordingly remanded to the district court to determine whether the petitioner was diligent in pursuing his appeal rights. *See DiCenzi*, 452 F.3d at 470 ("In the instant case, the district court simply did not develop a record as to whether DiCenzi was duly diligent for statutory purposes."); *id.* at 471 ("[W]e can only speculate whether DiCenzi exercised due diligence."); *id.* (remanding to determine when the petitioner "first learned of his right to appeal" and when he could be "reasonably expected to learn of his appeal rights"). Although *Johnson* admittedly casts some doubt on the soundness of *DiCenzi*'s categorical holding that the § 2244(d)(1) clock begins to run on delayed-appeal claims upon the denial of the motion for delayed appeal, *DiCenzi* remains binding on this panel. *See United States v. Pawlak*, 822 F.3d 902, 911 (6th Cir. 2016). Bound by *DiCenzi*, I would find Shorter's delayed-appeal claim timely. Nevertheless, I concur in the judgment because Shorter's claim fails on the merits.

The Ohio Court of Appeals denied Shorter's motion for delayed appeal without explanation. Shorter then appealed to the Ohio Supreme Court, arguing that the denial of his motion for delayed appeal was unconstitutional because he was not informed and was unaware of his appeal rights. The Ohio Supreme Court declined to accept jurisdiction without explanation. Giving Shorter the benefit of doubt whether the Ohio Supreme Court's decision rested on an independent and adequate state procedural bar, *see Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013), and assuming the Ohio Supreme Court denied Shorter's claim on the merits, the denial is not an unreasonable application of clearly established federal law. The state argued in response to Shorter's motion for delayed appeal that Shorter was not unaware of his appeal rights, and pointed out that Shorter had requested judicial release and modification of his sentences in previous cases where Shorter had pled guilty. The government also noted that Shorter was college educated and was represented by experienced counsel. Further, in response to inquiries from Shorter shortly after his guilty plea, Shorter's counsel informed him that he had at least one ground for appeal—that his guilty plea was not knowing and voluntary. Thus, there is evidence in the record suggesting that Shorter knew that he could appeal.

The United States Supreme Court has held that a defendant's habeas claim based on not being informed of his appellate rights in violation of Federal Rule of Criminal Procedure 32 fails if he otherwise had knowledge of his appeal rights. *Peguero v. United States*, 526 U.S. 23, 29-30 (1999). Here, there is evidence that Shorter was informed by counsel of his appeal rights.[1] The

---

[1] Ohio law, similar to the federal rules, requires that the trial court inform the defendant of his right to appeal his conviction after "imposing sentence in a serious offense that has gone to trial," Ohio Crim. R. 32 (B)(1), but notice of appellate rights is not always mandatory after a guilty plea, as in Shorter's case, *see* Ohio Crim. R. 32(B)(2) ("After imposing sentence in a serious offense, the court shall advise the defendant of the defendant's right, where applicable, to appeal or to seek leave to appeal the sentence imposed."). Shorter's sentence is not subject to appellate review because Ohio law specifically prohibits an appeal of a sentence where the defendant pleads guilty and receives a sentence that is jointly recommended, as here. *See* Ohio Rev. Code § 2953.08(D)(1).

Ohio courts' denial of Shorter's delayed appeal premised on the trial court's failure to inform him of his appellate rights therefore was not an unreasonable application of clearly established federal law.

Accordingly, I concur in the judgment.